**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: EQUIPMENT ACQUISITION RESOURCES, INC.<br><br>Debtor. | ) | (Bk. No. 09 B 39937)<br>(Chapter 11)<br>(Hon. John H. Squires)<br>(Adv. No. 10-00099) |
| UNITED STATES OF AMERICA,<br><br>Appellant,<br><br>v.<br><br>EQUIPMENT ACQUISITION RESOURCES, INC.<br><br>Appellee. | ) | No. 11 C 05045<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Equipment Acquisition Resources went bankrupt and eventually filed, in an adversary proceeding in bankruptcy, a first amended complaint seeking recovery of money that the company made to cover tax liabilities of its shareholders. The United States of America, on behalf of the Internal Revenue Service, moved to dismiss one of the counts (Count 4) that sought recovery of the money, arguing that sovereign immunity barred the claim. Fed. R. Civ. P. 12(b)(1).[1] R. 1. The bankruptcy court denied the Government's motion to dismiss. R. 12-2. For the reasons stated below, the Court affirms the bankruptcy court's decision.

[1]The Court has jurisdiction over this bankruptcy appeal under 28 U.S.C. § 158(a)(1). Citation to this Court's docket is "R." followed by the docket entry.

## I. Background

Equipment Acquisition Resources (EAR) was an Illinois corporation that sold and serviced semiconductor-manufacturing equipment. R. 12 (Appellee Br.) at 3.[2] EAR was a subchapter S corporation, meaning that the company itself was not subject to income taxation; instead, tax on the company's income or loss was passed through to the shareholders on a pro rata basis. *Id.* Beginning in at least 2005, Sheldon Player, one of EAR's shareholders, used company assets to perpetrate a "massive fraud." *Id.* The fraud was uncovered in 2009, and all of EAR's officers and directors resigned. *Id.*; R. 12-2, Appellee's Exh. A (Bankr. Op.) at 4. EAR's shareholders elected William A. Brandt, Jr. as EAR's Chief Restructuring Officer and sole member of the company's board of directors. Bankr. Op. at 4-5. Shortly thereafter, in October 2009, Brandt filed a voluntary petition for relief on behalf of EAR under Chapter 11 of the Bankruptcy Code. R. 7-3 (Appellant Br.) at 4.

Between October 2007 and December 2008, EAR made nine payments on behalf of three shareholders, totaling $4,737,261.36, to cover the shareholders' individual pass-through federal tax liabilities. Appellee Br. at 3-4; R. 12-3, Appellee's Exh. B (First Am. Compl.) ¶ 11. In January 2010, EAR, as debtor-in-possession with the powers of a trustee under 26 U.S.C. § 1107, filed a two-count adversary complaint against the United States seeking to recover these tax payments. R. 12-4, Appellee's

[2]The parties agree that, for purposes of appeal, the facts are uncontested, that is, the facts alleged in the first amended complaint are assumed to be true. *See* R. 7-3 (Appellant Br.) at 3-4; Appellee Br. at 3.

Exh. C (Compl.). In general, the complaint characterized all nine transactions from EAR to the IRS as "fraudulent transfers" recoverable under §§544(b), 548, and 550. *Id.*

Eight of the nine payments EAR made on behalf of its shareholders occurred within the two years before the Chapter 11 bankruptcy filing. *Id.* ¶ 10. Accordingly, in Count 1 of EAR's initial complaint, the trustee sought to recover these payments under sections 548(a)(1)(B) and 550 of the Bankruptcy Code. *Id.* ¶¶ 12-15. The ninth payment, however, occurred outside of this two-year period. Compl. ¶ 10. Count 2 of EAR's complaint sought to recover this payment pursuant to § 544(b). *Id.* ¶¶ 16-20.

In December 2010, EAR amended its complaint to add counts against the individual officers and shareholders whose tax liabilities were paid by EAR. First Am. Compl.. Count 2 of the original complaint, seeking avoidance and recovery of all nine tax payments pursuant to § 544(b) of the Bankruptcy Code, is now labeled as Count 4 in the amended complaint. *Id.* ¶¶ 17-21. In its amended answer filed in January 2011, the government asserted ten defenses, the second of which states:

> Count IV of the first amended adversary complaint is barred by the sovereign immunity of the United States of America for two reasons. First, a creditor holding an unsecured claim of the kind described in 11 U.S.C. § 544(b) could not avoid a fraudulent transfer to the United States under applicable *non-bankruptcy law* under similar circumstances. Second, under state law, the creditor of a debtor who fraudulently transfers money to the creditor of a relative or an affiliate in payment of the relative's or affiliate's debt to such creditor, where the creditor is aware of the fraud, cannot recover from the creditor of the relative or the affiliate. Since the IRS was without knowledge of the fraud when it accepted payment by the debtor for the tax debts of the Third-Party Defendants, there is no waiver of sovereign immunity for a state-law fraudulent transfer action against the United States. While § 544 is listed in § 106(a)(1), the statutory waiver of sovereign immunity must be strictly construed with all ambiguities resolved in favor of immunity.

Bankr. Op. at 5 (emphasis in original).

The bankruptcy court dismissed all counts against the individual taxpayers and approved a settlement agreement reached by the parties in February 2011. *Id.*. The settlement agreement resolved all claims pertaining to the eight transfers made between October 23, 2007 and October 23, 2009—the date Brandt filed the bankruptcy petition. *Id.* Additionally, the settlement agreement included a conditional settlement of EAR's § 544(b) claim pertaining to the transfer made outside the two-year period (Count 4). Appellant Br. at 5. For this claim, the government agreed to disgorge 37.5% of the $2,324,288 payment *unless* it prevails on its second asserted defense.[3] *Id.* Shortly after the agreement was finalized, the government filed its motion to dismiss Count 4 pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c). *Id.* at 6.

The government's motion to dismiss asserted three arguments. First, it contended that, although § 106(a)(1) lists § 544 as a provision for which sovereign immunity is abrogated, EAR's claim fails because no unsecured creditor could bring a § 544 claim outside of bankruptcy. *Id.* Second, the government argued that even if EAR may bring a § 544 claim against the IRS, § 7422 of the Internal Revenue Code suggests

[3]The settlement agreement in this case raises a question as to whether this Court has appellate jurisdiction. In order for judgment entered via a settlement agreement to preserve appellate jurisdiction, the settlement must truly be final, in the sense that affirmance would leave no more litigation pending. *See Sims v. EGA Prods.*, 475 F.3d 865, 867-68 (7th Cir. 2007). Here, affirmance of the bankruptcy court's decision means that the IRS pays out the 37.5% of the contested payment; there is no reservation of any other defenses or additional litigation. According to paragraph 9 of the agreement, the government agrees to file a dispositive motion on the basis of its "second defense . . . alone" and further agrees to issue payment if "all appeals of that ruling are exhausted." R. 12-5, Appellee's Exh. D (Mot. to Approve Settlement Agreement) at 14. So affirmance does mean the litigation would be over. As a result, the parties have properly preserved the Court's jurisdiction on appeal.

that the claim must be filed within two years of the petition date. *Id.* Lastly, the government asserted that the Illinois Uniform Fraudulent Transfer Act does not enable a creditor of a fraudulent transferor to impose liability on an innocent transferee (here, the IRS) that received a voluntary payment by the transferor in satisfaction of an antecedent debt of a related party (here, EAR's shareholders) with nothing to indicate the payment was actually fraudulent (meaning, an actual intent to defraud). Appellant Br. at 6-7.

In June 2011, the bankruptcy court issued an order denying the government's motion to dismiss Count 4. Bankr. Op. In its memorandum opinion, the bankruptcy court focused on the government's first argument. The bankruptcy court first addressed the "proper interpretation of § 106(a)(1) and the interplay of that provision with § 544(b)(1)." Bankr. Op. at 8. The bankruptcy court held that § 106(a)(1)'s plain language, which used the terms "immunity," "sovereign immunity," and "abrogate," "clearly and unambiguously communicate congressional intent to abolish the government's immunity from being sued in bankruptcy causes of action pursuant to the fifty-nine statutory provisions listed under § 106(a)(1)." *Id.* at 9. The bankruptcy court rejected the government's argument that "sovereign immunity bars [EAR's] claim under [§ 544(b)] because Illinois law does not allow an unsecured creditor to maintain a fraudulent transfer action against the United States." *Id.* at 10. Based on *In re C.F. Foods, L.P.*, 265 B.R. 71, 74 (Bankr. E.D. Pa. 2001), the bankruptcy court concluded that "Congress intended to include those state law causes of action available under § 544(b)(1)." *Id.* at 11. Additionally, the bankruptcy court rejected the government's

remaining arguments because the government could not meet its "'exceptionally heavy' burden of persuasion" where a party advances "an interpretation contrary to the plain meaning of the statute." Bankr. Op. at 14 (quoting *Patterson v. Shumate*, 504 U.S. 753, 760 (1992)).

The bankruptcy court also rejected the government's "last-ditch effort" to convince the court that §§ 7422 and 7426 of the Internal Revenue Code support the government's position that Count 4 must be dismissed. *Id.* at 13. The bankruptcy court refused to "speculate as to what Congress likely or unlikely envisioned" with the interplay of § 544(b) and §§ 7422 and 7426. *Id.* Finally, the bankruptcy court did not address the government's third argument pertaining to the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/9.

## II. Standard of Review

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158(a), to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard and reviews the bankruptcy court's legal findings under the *de novo* standard. *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009). Because this appeal only challenges the bankruptcy court's legal findings, the Court's review is *de novo*.

## III. Analysis

On appeal, the government claims that the bankruptcy court erred by rejecting all three of the arguments presented in its motion to dismiss. Accordingly, the government seeks to vacate the bankruptcy court's order requiring it to disgorge 37.5%

of the transfer made on October 21, 2007 pursuant to the settlement agreement. Because the Court disagrees with each of the government's arguments, the bankruptcy court's order is affirmed.

### A. Sovereign Immunity against Fraudulent Transfer Claims

The government's first—and most important—argument is that § 106(a)(1) does not waive sovereign immunity for a § 544(b) claim, because an unsecured creditor cannot file the underlying state-law action against a federal agency pre-petition. The doctrine of sovereign immunity dates back to the common law maxim that the "monarch can do no wrong," *United States v. Nordic Village*, 503 U.S. 30, 42 (1992) (Stevens, J., dissenting) (quotation and citation omitted), and prevents suits against federal agencies, unless Congress "unequivocally expressed" a clear intent to waive its immunity. *Id.* at 34 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)). In order to determine whether sovereign immunity is unequivocally waived with respect to EAR's claim, the Court must interpret and consider the interaction of three statutes: 11 U.S.C §§ 106(a) and 544(b), and 740 ILCS 160/5.

EAR claims that it can recover the October 21, 2007 tax payment pursuant to § 544(b)(1), which states (with emphasis added):

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under *applicable law* by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

The "applicable law" upon which EAR relies in this case is the Illinois Uniform Fraudulent Transfer Act. In relevant part, the Act provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> . . .
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction . . . .

740 ILCS 160/5(a)(2)(A). In turn, EAR relies on 11 U.S.C. § 106(a)(1) to demonstrate Congress's intent to waive sovereign immunity for its § 544(b) claim. Section 106(a)(1) states that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to . . . Section[ ] . . . 544." 11 U.S.C. § 106(a)(1).

When determining the scope of a statute, the role of the court is to examine the statute in its entirety in order to determine the legislation's purpose. *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006). The interpretive exercise must begin with an examination of the statutory text. *See Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543-44 (7th Cir. 2003). Where statutes are unambiguous, courts must give effect to their plain meaning. *Manning v. United States*, 546 F.3d 430, 433 (7th Cir. 2008); *see also Newsom v. Friedman*, 76 F.3d 813, 816-17 (7th Cir. 1996) (when the language is clear, there is no need to examine the legislative record). Additionally, when interpreting two potentially conflicting statutes, courts should seek to harmonize them if possible, rather than find them to be in direct conflict, requiring

a determination that one controls or preempts the other. *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 642 (7th Cir. 1993).

To begin, the government does not dispute that § 106(a)(1) unequivocally communicates Congress's intent to waive sovereign immunity with respect to the fifty-nine enumerated provisions, including § 544. *See* Bankr. Op. at 9; Appellant Br. at 9-10. As explained by the bankruptcy court, the IRS qualifies as a "governmental unit" for the purposes of the provision. Bankr. Op. at 9. And the plain meaning of the term "abrogate" is that the statute "abolishes" sovereign immunity with respect to the IRS for each listed provision. *Id.*

The real heart of the dispute in this case is whether § 544(b), which explicitly limits a trustee's ability to avoid a transfer, overrides § 106(a)'s abrogation of sovereign immunity. The text of § 544(b)(1) only permits a trustee to avoid a transfer "that is voidable under applicable law *by a creditor holding an unsecured claim*." § 544(b)(1) (emphasis added). As the government points out, this text requires that there must first be an unsecured creditor available to bring the applicable state-law claim before the bankruptcy's filing, as a condition of authorizing the trustee to bring the same suit post-petition. *See* 5 Collier on Bankruptcy ¶ 544.06[1] (discussing the so-called "triggering" or "golden" creditor).

In this case, EAR—as an unsecured pre-petition creditor—would have been barred from bringing an Illinois fraudulent transfer action against the IRS outside of bankruptcy court. Thus, the government argues that "[i]t rather logically follows that, if a state-law avoidance action by an unsecured creditor on the day before the petition

was barred by federal sovereign immunity, § 544(b) does not, by its express terms, grant the trustee any power to pierce through that immunity." Appellant Br. at 14. But § 106(a)(1) establishes that sovereign immunity is completely abolished "with respect to . . . Section[ ]. . . 544." It simply does not matter how a sovereign immunity defense is invoked against EAR's claim. Section 106(a)(1) simply eliminates the obstacle wherever it appears "with respect to" § 544, even if that claim is based on subsection (b) of § 544. In other words, the Court agrees that "[b]y including § 544 in the list of Bankruptcy Code sections set forth in § 106(a), Congress knowingly included state law causes of action within the category of suits to which a sovereign immunity defense could no longer be asserted." *In re C.F. Foods*, 265 B.R. at 85.

The government argues that §§ 106(a)(1) and 544(b) are conflicting provisions that create ambiguity when read together, and the government then invokes the statutory canon of construction that all waivers of sovereign immunity shall be strictly construed in favor of the government. But there is no ambiguity. Section 106(a)(1) eliminates the sovereign immunity defense with respect to any § 544 claims. In any event, even if there were a conflict between the two sections, the earlier enacted statute generally yields to the more recently enacted statute. *See Quinn v. Gates*, 575 F.3d 651, 655 (7th Cir. 2009); *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 993 n.5 (7th Cir. 2001). Because the 1994 amendment to § 106(a)(1) abrogated any defense of sovereign immunity for particularly-specified provisions of the Bankruptcy Code, including § 544, a debtor's sovereign immunity bar from bringing state-law causes of action against the United States under § 544(b)(1) is eliminated.

The government argues against that interpretation because such a reading assertedly violates a separate subsection of §106(a). Appellant Br. at 11-12. According to § 106(a)(5), "[n]othing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law." But this argument has been adequately addressed and dismissed by the bankruptcy court below: the anti-sovereign-immunity interpretation does not create any *new* cause of action; instead, it simply "recognizes the trustee's power to bring certain state law causes of action, a power that existed under § 70(e) of the Bankruptcy Act of 1898 and was adopted by the Code under § 544(b) in 1978." Bankr. Op. at 11-12 (citing *In re DBSI, Inc.*, 2011 WL 607442, at *5 (Bankr. D. Del. Feb. 11, 2011) and *C.F. Foods*, 265 B.R. at 85-86). As a result, there is no inconsistency with § 106(a)(5).

In summary, because the plain language of §§ 106(a)(1) and 544(b)(1) are clear, the provisions may be read without conflict, and the Court's interpretation does not create any new substantive cause of action, the government's sovereign immunity argument fails.

### B. Administrative Claim for Refund

Alternatively, the government asserts that if § 544(b) can be read to recover federal tax payments, then EAR's claim is still barred because EAR failed to file a timely administrative claim for refund with the IRS before bankruptcy. Appellant Br.

at 39-44. The government cites two provisions of the Internal Revenue Code to support its claim: 26 U.S.C. §§ 7422(a) and 7426. *Id.* Specifically, it suggests that the former provision "flatly bars the instant suit" while the latter suggests that it is "extremely unlikely" that § 544(b) would be used by bankruptcy trustees to recover federal tax payments made more than two years before the petition. *Id.* at 39. The Court concludes that neither provision precludes EAR's recovery in this case.

First, the government argues that § 7426 of the Internal Revenue Code suggests that a claim to recover federal tax payments pursuant to 11 U.S.C. § 544(b) must be filed within a "short" time period. Appellant Br. at 39. In general, § 7426 waives sovereign immunity for suits by non-taxpayers to recover money or property wrongfully *levied* by the IRS, as long as it is filed within a nine-month period. 26 U.S.C. §§ 6532, 7426. The government admits that this levy provision does not directly apply to voluntary tax payments made by third parties. Nevertheless, it contends that the provision's short statute of limitations reflects a "recognition that the IRS needs to know [immediately] if money it collected will have to be disgorged," as opposed to "twenty years (or more)" later. Appellant Br. at 40. This argument, however, stretches the levy-limitations provision beyond its actual applicability. Section 7426 has no direct applicability to the bankruptcy issue at hand, whether through § 7246's general subject area (the Internal Revenue Code), the specific subject matter (levies) it addresses, or the specific issue (a statute of limitations) it governs. The levy provision offers no guidance for the sovereign immunity at issue in this case.

The government also contends that EAR's claim is barred because the company failed to comply with the refund requirements outlined in 26 U.S.C. § 7422. Under § 7422(a), an administrative claim for refund must be filed before a claimant may bring suit in a district court.[4] Failure to bring a timely claim for refund is a jurisdictional bar to a federal suit. *See Goulding v. United States*, 929 F.2d 329, 331 (7th Cir. 1991). Generally, a refund claim must be submitted to the IRS within two years of the contested payment to be considered timely. 26 U.S.C. § 6511(a).

The government makes three arguments in support of its claim that the Internal Revenue Code's refund provision applies to this case. First, it asserts generally that the refund requirements apply not only to taxpayers seeking to recover overpayments, but also to third-party payers seeking recovery. *See Williams v. United States*, 514 U.S. 527, 539-40 (1995) (holding that person who paid tax for another in order to discharge lien on their own property may claim a refund and bring suit if claim was denied). Second, the government relies on the Tenth Circuit's decision in *In re Franklin Savings Corp.*, 385 F.3d 1279, 1288-90 (10th Cir. 2004), for the notion that lack of compliance with the two-year time limit is a strict bar for a suit to recover a tax payment. Appellant Br. at 43-44. Finally, the government cites *In re Anton Motors, Inc.*, 177 B.R. 58, (Bankr. D. Md. 1995), as persuasive support. Appellant Br. at 42-43. *Anton Motors*

---

[4]Section 7422(a) states: "No suit . . . shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund . . . has been duly filed with the [IRS]."

applied the Maryland tax code (*i.e.*, refund provisions) to a § 544(b) claim seeking avoidance of a local tax payment. 177 B.R. at 64-67.

Ultimately, each of the government's arguments hinges on characterizing EAR's state-law fraudulent transfer claim to recover a federal tax payment as a "refund" under the Internal Revenue Code. But none of the cases cited by the government explain why the term "refund" should be given such an expansive definition, nor is this Court aware of any additional controlling authority for support.[5] In this action, EAR is trying to recover money that was used to pay shareholders' tax liabilities, not to recover the *over*payment of money above and beyond the tax liabilities. The premise of EAR's claim is *not* that the shareholders overpaid their tax, but that the moneys used to pay the tax were fraudulently transferred. This is not a claim for a "refund." Thus, § 7422 does not apply to EAR's fraudulent transfer claim under § 544(b), so there was no need for EAR to file a refund claim with the IRS before bringing this action.

### C. Illinois Uniform Fraudulent Transfer Act

The government's final argument on appeal is that the Illinois Uniform Fraudulent Transfer Act does not apply to EAR's tax payment, because it was made on behalf of a third-party and was accepted by a good faith creditor. Appellant Br. at 45-47. In support of its claim, the government cites 740 ILCS 160/9.[6] But § 9 of the

---

[5]Moreover, *Franklin Savings* offers little insight as a whole to the question in this case. Instead, that case primarily focuses on whether § 106 abrogates the conditions of a waiver of sovereign immunity under § 2401(b) of the Federal Torts Claim Act. *Franklin Savings*, 385 F.3d at 1288-91.

[6]This provision states that "[a] transfer or obligation is not voidable under [740 ILCS 160/5(a)(1)] against a person who took in good faith and for a reasonably equivalent value or

Uniform Fraudulent Transfer Act provides a defense against a fraudulent transfer action only if actual fraud is the basis for the claim. 740 ILCS 160/9(a) (specifically citing 740 ILCS 160/5(a)(1), the actual fraud provision). In this case, EAR seeks to avoid a transfer that was a result of constructive fraud, pursuant to § 5(a)(2) of the Uniform Fraudulent Transfer Act. As a result, the government cannot seek the shield of § 9(a).

In response to § 9(a)'s specific and sole citation to actual fraud, the government argues instead that § 9 of the Uniform Fraudulent Transfer Act, when "read as a whole," offers a defense against constructive fraud claims. Appellant Br. at 45. According to the government, "the reason that § 9(a)'s defense is limited to § 5(a)(1) (*i.e.*, actual fraud) is because the state legislature did not envision that the rest of the statute could ever be construed to deprive a transferee of that defense . . . ." *Id.* The Court disagrees. The legislative text is clear, and "a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Here, the Illinois legislature specifically carved out a defense for innocent transferees with respect to actual fraud, but not constructive fraud. What's more, there are differences between actual fraud and constructive fraud (or "fraud in law"), namely, that in the latter, fraud is presumed because of the lack of reasonably equivalent value in exchange for the transfer and the transfer rendered the debtor unable to pay its debts as they became due. *In re Zeigler*, 320 B.R. 362, 374 (Bankr.

---

against a subsequent transferee or obligee." 740 LILCS 160/9(a).

N.D. Ill. 2005); *see* 740 ILCS 160/5(a)(2)(A), (B). Thus, the government's third and final argument is also rejected.

**IV. Conclusion**

For the reasons discussed above, the bankruptcy court's order denying the government's motion to dismiss Count 4 is affirmed.

ENTERED:

Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

Date: January 4, 2013